IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| DANA J. DELLUOMO, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. CIV-11-1337-C |
| | ) |
| AMERICAN MEDICAL SECURITY | ) |
| LIFE INSURANCE COMPANY, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OPINION & ORDER**

Plaintiff filed this benefits action against her insurer on November 9, 2011, alleging that Defendant is liable for breach of contract and bad faith for refusing to cover certain prescribed treatments and drugs. Defendant argues that the claims it denied were not medically necessary and that it acted in good faith in considering Plaintiff's claims. Now before the Court is Defendant's Motion for Summary Judgment (Dkt. No. 67).

I. BACKGROUND

In April 2010, Plaintiff was diagnosed with stage IV breast cancer with metastasis to the bones. The following month, Plaintiff traveled to the Burzynski Clinic in Houston for treatment after learning about the Clinic's different approach to treating cancer by watching an interview with Suzanne Somers on the Larry King show and then reading Somers' book. The Burzynski Clinic treated Plaintiff with a mix of traditional and experimental drugs, including sodium phenylbutyrate, Nexavar, Xeloda, and Zometa. Defendant denied all claims submitted on Plaintiff's behalf by the Burzynski Clinic, citing the provision in Plaintiff's insurance policy requiring a "covered expense" to be "medically necessary," or

treatment "consistent with the Insured Person's medical condition [and] known to be safe and effective by most Doctors who are licensed to treat the condition at the time the service is rendered." (App. to Def.'s Mot., Dkt. No. 68, Ex. 1 at 81-82.)

Plaintiff appealed Defendant's coverage decision in July 2010. During Plaintiff's appeal, the independent reviewer hired by Defendant upheld Defendant's general claim denial, concluding that "[u]nder the terms of plan language any treatment plan containing phenylbutyrate for cancer therapy does not rise to the standard of medical necessity." (Id., Ex. 2 at 17.) Subsequently, the Burzynski Clinic initiated a second appeal. This time, the independent medical examiner reversed a portion of Defendant's denial, finding that Defendant should have covered $3,611.81 worth of the submitted claims as they related to medically necessary treatments, rather than the Burzynski's experimental drugs. Defendant applied this amount to Plaintiff's $10,000.00 out-of-network deductible.

Ultimately, Plaintiff decided to return to Oklahoma to receive treatment from a local oncologist. Her new physician, Dr. Nimeh, discontinued the Burzynski Clinic's treatment of sodium phenylbutyrate and Nexavar. In January 2011, Dr. Nimeh recommended Avastin to Plaintiff but Defendant refused to cover it, given the FDA's recent negative press release about Avastin's side effects and ineffectiveness. Instead, Dr. Nimeh prescribed Abraxane, which Defendant covered, and which stabilized Plaintiff's condition over the next year. Plaintiff did not appeal Defendant's Avastin coverage decision internally but filed the present action, which argues that Defendant's refusal to cover Avastin and denial of the claims

submitted by the Burzynski Clinic breached her insurance contract and Defendant's duty to deal fairly and act in good faith toward Plaintiff.

## II. LEGAL STANDARD

Summary judgment is proper if the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it affects the disposition of the substantive claim. Anderson v. Liberty Lobby, Inc., 477 U.S. 247 (1986). The party seeking summary judgment bears the initial burden of demonstrating the basis for its motion, and identifying those portions of "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,'" that demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (citation omitted). If the movant satisfactorily demonstrates an absence of a genuine issue of material fact with respect to a dispositive issue for which the non-moving party will bear the burden of proof at trial, the non-movant must then "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Id. at 324. A court considering a summary judgment motion must view the evidence and draw all reasonable inferences therefrom in the light most favorable to the nonmoving party. Kendrick v. Penske Transp. Servs., Inc., 220 F.3d 1220, 1225 (10th Cir. 2000).

III.  ANALYSIS

A.  Breach of Contract

Plaintiff appears to allege two causes of action against Defendant: "breach[] [of] her insurance contract and breach[] [of Defendant's] duty to deal fairly and act in good faith towards the Plaintiff." (Complaint, Dkt. No. 1, at 2 (emphasis added).)  Oklahoma law distinguishes between "a tort claim for bad faith and a claim for breach of contract." Ball v. Wilshire Ins. Co., 2009 OK 38, ¶ 21 n.40, 221 P.3d 717, 724 n.40 (citing Taylor v. State Farm Fire & Cas. Co., 1999 OK 44, ¶ 9, 981 P.2d 1253, 1258).  An action for breach of an insurance contract requires Plaintiff—the insured—to prove that the policy covers her claim. Boggs v. Great N. Ins. Co., 659 F. Supp. 2d 1199, 1204 (N.D. Okla. 2009) (citing Pitman v. Blue Cross & Blue Shield of Okla., 217 F.3d 1291, 1298 (10th Cir. 2000); U.S. Fid. & Guar. Co. v. Briscoe, 1951 OK 386, ¶ 8, 239 P.2d 754, 756).  Thus, summary judgment for the insurer is appropriate "when the undisputed facts show that the insured has failed to establish a covered claim under its insurance policy." Id. at 1205.

Here, Plaintiff's insurance policy required Defendant to cover an expense if the treatment was "medically necessary," or "consistent with [Plaintiff's] medical condition [and] known to be safe and effective by most Doctors who are licensed to treat the condition at the time the service is rendered." (App. to Def.'s Mot., Ex. 1 at 81-82.)  The Court must determine, therefore, whether there is a genuine dispute of material fact with regard to whether the treatments Defendant refused to cover were "medically necessary."

1.  Sodium Phenylbutyrate

There is no dispute among the parties that the sodium phenylbutyrate treatments Plaintiff received at the Burzynski Clinic were not medically necessary, or not standard care for stage VI breast cancer patients. Plaintiff admitted in her deposition that she "knew that [Dr. Burzynski's use of sodium phenylbutyrate] was something different" and that the sodium phenylbutyrate treatment "wasn't necessarily mainstream" or "something used by the majority of doctors." (App. to Def.'s Mot., Ex. 1 at 34, 144, 146.) Moreover, in her Response, Plaintiff clarifies that she does not seek reimbursement for the sodium phenylbutyrate in this lawsuit. (Pl.'s Resp., Dkt. No. 80, at 1 n.1.) Accordingly, summary judgment for Defendant is appropriate.

2.  Nexavar

In the breach of contract section of her brief, Plaintiff barely addresses Nexavar, noting only that AMS would have "paid for Nexavar if it was prescribed by any provider other than [the] Burzynski [Clinic]." (Pl.'s Resp. at 22, n. 6.) Plaintiff does not provide any evidence to rebut the testimony of Dr. Rehman, Defendant's independent medical examiner, who testified that Nexavar is "routinely . . . used for liver cancer and not for breast cancer" and that "it is not the standard of care in the treatment of metastatic breast cancer." (Def.'s App., Ex. 8 at 102.) To support summary judgment, Defendant also relied on the testimony of Plaintiff's own oncologist, Dr. Nimeh, who testified that she referred to the treatment Plaintiff received at the Burzynski Clinic as "unorthodox" because the Burzynski Clinic prescribed medication that oncologists "do not use conventionally for the treatment of breast

cancer," including Nexavar. (Def.'s App., Ex. 5 at 20.) Plaintiff does not refute Dr. Nimeh's opinion. Accordingly, the Court grants Defendant summary judgment on this claim.

3.  Re-processed Claims

The "re-processed claims" are claims for treatment and medications that Defendant originally refused to cover, but then reversed its position and subsequently processed after an independent medical review during Plaintiff's second internal appeal. These claims include Zometa, a drug to prevent bone pain and disability, Xeloda, a chemotherapy medication, and various tests and office consultations. All together, the re-processed claims amounted to $3,850.81, which Defendant applied toward Plaintiff's $10,000 deductible. The parties agree that these claims should have been covered. The problem for Plaintiff is that ultimately, they were in fact covered, meaning there is no remedy available to Plaintiff in a contract—rather than tort—based action. Oklahoma law limits damages in a straight breach of contract action to "*recovery of loss* under the policy," not "the *loss payable under the policy* together with . . . *those other items of recovery* that are consistent with harm flowing from [an] insurer's bad-faith breach of its implied-in-law dut[ies]." Taylor, 1999 OK 44, ¶ 9, 981 P.2d at 1258. Accordingly, because Plaintiff has no loss under her policy for the re-processed claims, summary judgment for Defendant is appropriate.

4.  Other Office Visits/Tests

Plaintiff's remaining out-of-pocket expenses total $1,945.00, which represent unpaid claims for lab tests and consultations with Plaintiff's doctors. Defendant argues it refused to pay these expenses because they either were not medically necessary or there was no

6

evidence the service was actually provided, a determination upheld by Dr. Rehman during his independent medical review. Plaintiff does not address Dr. Rehman's conclusion that some of the tests and consultations were not medically necessary. With respect to one physical examination, Plaintiff insists that a lack of documentation was not a sufficient basis for denying the claim, because Defendant "could have simply called the Burzynski [Clinic] or [Plaintiff] to ask if there had been [such] an examination" or treatment. (Pl.'s Resp. at 20.) But, not only did Plaintiff present no supporting documentation for her claims, she can show no damages. Even if all of the remaining claims were payable, Defendant would have simply applied the $1,945.00 to Plaintiff's $10,000 out-of-network deductible, of which only $3,850.81 had been met. Thus, summary judgment for Defendant is appropriate because Plaintiff can show no loss under her policy. See Taylor, 1999 OK 44, ¶ 9, 981 P.2d at 1258.

5.  Avastin

Finally, Plaintiff argues Defendant breached its contract with her when Defendant refused to cover Avastin, a drug prescribed by Plaintiff's local oncologist, Dr. Nimeh. Approximately one month before Dr. Nimeh recommended Avastin to Plaintiff, the FDA "recommend[ed] removing the breast cancer indication from the label for Avastin . . . because the drug ha[d] not been shown to be safe and effective for that use." (Def.'s App., Ex. 7 at 30; id., ex. 5 at 20.) Consequently, Defendant argues it properly refused to authorize Avastin for Plaintiff because Avastin was not "medically necessary"—not recognized as safe and effective by a majority of oncologists. As support for its position, Defendant points to the FDA's conclusion that clinical studies indicate that the drug does not "prolong overall

survival in breast cancer patients or provide a sufficient benefit in slowing disease progression" and that any benefits do not "outweigh the significant risk to patients," including "severe high blood pressure; bleeding and hemorrhage; the development of perforations (or 'holes') in the body, including in the nose, stomach, and intestines; and heart attack or heart failure." (Id., Ex. 7 at 30.)

In arguing against summary judgment, Plaintiff relies on the testimony of Dr. Nimeh and Dr. Foote. For example, Plaintiff quotes Dr. Nimeh as saying, "[t]here are some leaders in the field [of oncology] who still use [Avastin] today." (Pl.'s Resp., Ex. 26 at 59.) Plaintiff also offers the testimony of Dr. Foote that "it would be a false statement to say there is no support in the general oncology community for the use of Avastin in breast cancer." (Id., Ex. 21 at 59.) This testimony, however, is not enough to satisfy Plaintiff's burden of demonstrating that a "majority" of oncologists recognized Avastin as "safe and effective" at the time Defendant denied Plaintiff's claim. Although Dr. Nimeh opined that Avastin could be helpful in individual cases and that some doctors continued to use Avastin, Dr. Nimeh did not testify that there was a consensus among the majority of oncologists as to the safety or effectiveness of Avastin. In fact, Dr. Nimeh conceded that "if you look at the cases on the whole there was no benefit" to Avastin and that "studies show . . . that statistically overall there's no difference in outcomes from patients who take Avastin versus patients who don't take Avastin." (Id., Ex. 26 at 45-46.) Likewise, although Dr. Foote admitted that there was some support remaining in the general oncology community for the use of Avastin in breast cancer, Dr. Foote also testified that support "is limited," that the general community of

oncologists now "use much less Avastin for breast cancer" because of the FDA studies, that although "there is support for use of [Avastin] in breast cancer, . . . it's not used very often" (Def.'s App., Ex. 3 at 55, 58), that "Avastin is quite controversial," and that "many people think the risk and the toxicity of Avastin is not worth the benefit." (Pl.'s Resp., Ex. 21 at 49.) Accordingly, because Plaintiff cannot demonstrate that her policy covered Avastin, Defendant is entitled to summary judgment.

B.  Tort of Bad Faith

Oklahoma first recognized the tort of bad-faith breach of contract in Christian v. American Home Assurance Co., 1977 OK 141, 577 P.2d 899.  See Buzzard v. Farmers Ins. Co., 1991 OK 127, ¶ 11, 824 P.2d 1105, 1108.  In a bad faith action, Plaintiff can recover more than just a loss under her policy; she can also recover "those *other items* . . . that are consistent with harm flowing from insurer's bad-faith breach of its implied-in-law dut[ies]." Taylor, 1999 OK 44, ¶ 9, 981 P.2d at 1258.  The "implied duty to deal fairly and act in good faith with its insured," Christian, 1977 OK 141, ¶ 25, 577 P.2d at 904, requires an insurer to investigate its insured's claim in a timely and proper fashion and to pay a claim promptly. Brown v. Patel, 2007 OK 16, ¶ 11, 157 P.3d 117, 122; Buzzard, 1991 OK 127, ¶ 14, 824 P.2d at 1109.  "The critical question in a bad faith tort claim is whether the insurer had a 'good faith belief, at the time its performance was requested, that it had a justifiable reason for withholding [or delaying] payment under the policy.'" Ball v. Wilshire Ins. Co., 2009 OK 38, ¶ 22, 221 P.3d 717, 725 (internal citations omitted).

9

1. Sodium Phenylbutyrate, Nexavar, & Avastin

Because the Court has determined that sodium phenylbutyrate, Nexavar, and Avastin were not "medically necessary," and therefore not covered under Plaintiff's insurance policy, Plaintiff cannot maintain a bad faith action against Defendant for those claims. See Ball, 2009 OK 38, ¶ 21, 221 P.3d at 724 (noting the first element of a bad faith claim against an insurer is that the "claimant was entitled to coverage under the insurance policy at issue"). Summary judgment is therefore appropriate for Defendant.[*]

2. Re-processed Claims

Although Plaintiff cannot maintain a breach of contract action against Defendant for the re-processed claims, because she cannot show a loss under her policy, "[n]o court has held that an insured must actually prevail on a separate underlying breach of contract claim in order to maintain a successful bad faith claim." Vining on Behalf of Vining v. Enter. Fin. Grp., Inc., 148 F.3d 1206, 1214 (10th Cir. 1998). Plaintiff alleges that Defendant initially denied these claims solely because they were submitted by the Burzynski Clinic, without proper investigation into whether the claims were in fact medically necessary. Viewing the facts in the light most favorable to Plaintiff, there is a genuine issue of material fact as to whether or not Defendant properly investigated these claims prior to Plaintiff's second appeal and whether Defendant's delay in payment was justifiable. Oklahoma law permits recovery

---

[*] Even if the Court had not determined as a matter of law that Avastin, Nexavar, and sodium phenylbutyrate were not covered by Plaintiff's policy, Defendant would still be entitled to summary judgment because it had a "reasonable basis for delaying payment," id., given Defendant's evidence indicating that those drugs were not medically necessary.

for mental or emotional distress suffered as a result of an insurer's bad faith. See Christian, 1977 OK 141, ¶ 10, 577 P.2d at 902 (holding the insured contracts not only "to protect (himself) against the risks of accidental losses," but also "the mental distress which might follow from the losses"); Coble v. Bowers, 1990 OK CIV APP 109, ¶ 19, 809 P.2d 69, 73 ("Mental distress is recognized as an ordinary and natural result of a failure of insurance."). Plaintiff's bad faith claims relating to Defendant's alleged failure to investigate the re-processed claims properly and pay them promptly thus survives summary judgment.

3.  Other Remaining Claims

With respect to the remaining $1,049.00 worth of claims, Plaintiff has pointed to no evidence rebutting Defendant's contention that they were either not medically necessary or improperly documented. Accordingly, Plaintiff has not put forward any proof that her policy covered these claims or that Defendant did not have a reasonable basis for its denial. Summary judgment for Defendant is appropriate.

C.  Punitive Damages

Punitive damages are available in bad faith cases only where there is evidence "of reckless disregard toward another's rights from which malice and evil intent may be inferred." Badillo v. Mid Century Ins. Co., 2005 OK 48, ¶ 66, 121 P.3d 1080, 1106. Whether Plaintiff has made such a showing "remains an issue of law for the trial court in its role as gatekeeper to determine." Id., 2005 OK 48, ¶ 66, 121 P.3d at 1106. Here, viewing the facts in the light most favorable to Plaintiff, the Court concludes that the same genuine

disputes of material facts related to Plaintiff's surviving bad faith claims preclude summary judgment on the issue of punitive damages.

## IV.  CONCLUSION

Accordingly, Defendant's Motion for Summary Judgment (Dkt. No. 67) is hereby GRANTED IN PART and DENIED IN PART.

IT IS SO ORDERED this 1st day of October, 2013.

ROBIN J. CAUTHRON
United States District Judge